**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| CDI Energy Services, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING PLAINTIFF'S** |
| | ) | **MOTION FOR PRELIMINARY** |
| vs. | ) | **INJUNCTION AND DISSOLVING** |
| | ) | **THE TRO** |
| West River Pumps, Inc., John Martinson, | ) | |
| Dale Roller, and Kent Heinle, | ) | Case No. 1:07-cv-085 |
| | ) | |
| Defendants. | ) | |

On November 16, 2007, the plaintiff, CDI Energy Services, Inc., (CDI) filed a motion for a temporary restraining order and preliminary injunction. See Docket No. 10. On November 20, 2007, the Court granted the motion for a TRO against the defendants, West River Pumps, Inc., John Martinson, Dale Roller, and Kent Heinle (collectively "the Defendants"). A show cause hearing was held on November 27, 2007. See Docket Nos. 12 and 16. On November 30, 2007, the Defendants filed a motion to dissolve the temporary restraining order and a response in opposition to the motion for preliminary injunction along with supporting affidavits. See Docket Nos. 19-24. CDI filed a reply on December 7, 2007. See Docket No. 27.

Before the Court is CDI's motion for preliminary injunction filed on November 16, 2007, and the Defendants' motion to dissolve the temporary restraining order. See Docket Nos. 12 and 19. CDI seeks a preliminary injunction enjoining the Defendants from using, disclosing, or transmitting confidential trade secrets for any purpose. For the reasons set forth below, the Court denies CDI's motion for preliminary injunction and dissolves the TRO.

**I.      BACKGROUND**

CDI began operations in 1999 as CDI Axelson after it acquired the sales and marketing arm of Axelson, Inc., a provider of production equipment to the oil and gas industry. In March 2007, Upstream Energy Services, Inc., purchased CDI's assets, liabilities, and goodwill. CDI has 24 offices in the United States, including an office located in Dickinson, North Dakota. CDI sells and services sucker rods, sucker rod pumps, general oilfield supplies, tubing anchors, well service products, and surface safety equipment used for the recovery of oil and gas with artificial lift.

The three individual defendants, John Martinson, Dale Roller, and Kent Heinle, were the only employees at CDI's Dickinson office in 2007. Martinson was the district manager, Roller was the sales and service representative, and Heinle was the service technician. On October 16, 2007, Martinson, Roller, and Heinle resigned from CDI.

Prior to working for CDI, Martinson and Roller were employed by competitors of CDI, namely, Red Iron Pump and Supply, and Weatherford. See Affidavit of John Martinson, Docket No. 22, ¶ 11. In approximately 2000, representatives of CDI contacted Martinson and Roller and asked them to open an office for CDI in Dickinson, North Dakota, and to solicit customers from their employers. See Affidavit of John Martinson, Docket No. 22, ¶ 11, Affidavit of Dale Roller, Docket No. 23, ¶ 3. Both Martinson and Roller went to work for CDI in 2000 and brought customers/clients with them. Kent Heinle began his employment at CDI's Dickinson location in April 2007.

In 2007, the defendants apparently decided to leave CDI and open a competing business. In August 2007, they incorporated West River Pumps, Inc. for that purpose. See Affidavit of John Martinson, Docket No. 22, ¶ 21. West River Pump's trade name was registered in 2007. Prior to leaving CDI, the defendants sought legal advice concerning potential legal issues involved with their

decision to leave CDI. See Affidavit of John Martinson, Docket No. 22, ¶ 22. Based on the "advice" of counsel, the defendants contacted customers/clients of CDI in an effort to obtain their written or verbal permission to remove pumps from CDI's office. On October 15, 2007, Martinson, Roller, and Heinle removed some customers' spare pumps from CDI's office that were awaiting service or repair. See Affidavit of Danny Matherne, Docket No. 11-2, p. 5. Martinson has admitted that he contacted several customers of CDI to solicit and entice them to bring their business to West River Pumps, but he contends that all such contacts were made on his personal time and that he did not believe it was improper because CDI had encouraged him to follow the same procedure when he was hired by CDI in 2000. See Affidavit of John Martinson, Docket No. 22, ¶ 23.

CDI argues that during the defendants' employment with CDI, Martinson, Roller, and Heinle received management training, had access to confidential customer information, and a marketing network. See Affidavit of Danny Matherne, Docket No. 11-2, p. 3. CDI contends that Martinson, Roller, and Heinle were provided with confidential information concerning all of CDI's customers which included details of CDI's customers' oil and gas well programs and strategies, and pump repair history. CDI further contends that the defendants obtained substantial knowledge of CDI's internal workings, including its business strategies, costs, pricing methods, marketing approaches, and CDI's customized solutions to its customers' needs. See Affidavit of Danny Matherne, Docket No. 11-2, p. 3. In response, the defendants argue that they never received any formal training or education from CDI, nor were they provided with any marketing strategies by CDI. See Affidavit of John Martinson, Docket No. 22, ¶¶ 5,6; Affidavit of Dale Roller, Docket No. 23, ¶¶ 11; Affidavit of Kent Heinle, Docket No. 24, ¶ 11. The defendants essentially contend that Martinson and Roller were hired by CDI in 2000 because they already had extensive oil field experience, they had

3

knowledge of the specialized type of work and services to be provided by CDI, and they could immediately bring business to CDI based on their prior employment.

CDI argues that it had personnel policies that prohibit employees from disclosing CDI's confidential information and trade secrets, and from engaging in any activity that conflicts with CDI's interests. See Affidavit of Danny Matherne, Docket No. 11-2, pp. 5-6. CDI contends that Martinson, Roller, and Heinle have used, and continue to use, confidential customer information they obtained while employed at CDI for their benefit at West River Pumps. The defendants contend that at no time during their employment at CDI did they sign any type of employment contract or confidentiality agreement, and that nothing in the CDI office in Dickinson was labeled as confidential or a "trade secret." CDI asserts that the defendants are using confidential information, are now unfairly competing with CDI, and have caused CDI to lose its customers, its goodwill, and its present and future business in Dickinson.

The defendants have provided the Court with a description of all records taken from CDI in October 2007. They argue that, although they do not believe such records constitute "trade secret" information, all records and documents in their possession have now been provided to CDI. The defendants state that the records and documents were never used and, contrary to CDI's allegations, no other records, documents, or files were taken or copied.

CDI alleges that Martinson, Roller, and Heinle resigned from CDI at a time when many of CDI's customers were increasing their oil and gas well sales and service needs in western North Dakota. See Affidavit of Danny Matherne, Docket No. 11-2, p. 6. CDI claims that the timing of the resignations in October 2007 gave West River Pumps a distinct competitive advantage in convincing CDI's customers to switch to West River Pumps.

## II.   LEGAL DISCUSSION

Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, in determining whether a temporary restraining order should be issued, the Court must look to the specific facts shown by affidavit(s) to determine whether immediate and irreparable injury, loss, or damage will result to the applicant. In determining whether preliminary injunctive relief should issue, the Court is required to consider the factors set forth in Dataphase Sys., Inc., v. C.L. Sys. Inc., 640 F.2d 109, 114 (8th Cir. 1981) (*en banc*). The Eighth Circuit summarized those factors as follows:

> When considering a motion for a preliminary injunction, a district court weighs the movant's probability of success on the merits, the threat of irreparable harm to the movant absent the injunction, the balance between harm and the injury that the injunction's issuance would inflict on other interested parties, and the public interest. Dataphase Systems, Inc. v. C.L. Sys. Inc., 640 F.2d 109, 114 (8th Cir. 1981) (*en banc*). We reverse the issuance of a preliminary injunction only if the issuance "is the product of an abuse of discretion or misplaced reliance on an erroneous legal premise." City of Timberlake v. Cheyenne River Sioux Tribe, 10 F.3d 554, 556 (8th Cir. 1993) *cert. denied* 512 U.S. 1236, 114 S.Ct. 2741, 129 L.Ed. 2d 861 (1994).

Pottgen v. Missouri State High School Activities Ass'n, 40 F.3d 926, 929 (8th Cir. 1994); Pruco Securities Corp. v. Montgomery, 264 F. Supp. 2d 862, 866 (D.N.D. 2003).

It is well-established that the burden of establishing the necessity of a preliminary injunction is on the movant. Baker Elec. Co-op, Inc. v. Chaske, 28 F.3d 1466, 1472 (8th Cir. 1994); Modern Computer Sys., Inc. v. Modern Banking Sys., Inc., 871 F.2d 734, 737 (8th Cir. 1989) (*en banc*). "No single factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction." Baker, 28 F.3d at 1472 (quoting Calvin Klein Cosmetics Corp. v. Lenox Labs, Inc., 815 F.2d 500, 503 (8th Cir. 1987)). The granting of a preliminary injunction is an extraordinary remedy which must be clearly established by the movant. Pruco Securities Corp. v. Montgomery, 264 F. Supp. 2d 862, 866 (D.N.D. 2003).

### A.     **THE PROBABILITY OF SUCCESS ON THE MERITS**

In considering the likelihood of the movant prevailing on the merits, a court need not decide whether the movant will ultimately prevail at trial. Glenwood Bridge, Inc. v. City of Minneapolis, 940 F.2d 367, 371 (8th Cir. 1991). The Eighth Circuit has held that of the four factors to be considered by the district court in considering preliminary injunctive relief, the likelihood of success on the merits is "most significant." S&M Constructors, Inc. v. Foley Co., 959 F.2d 97, 98 (8th Cir. 1992).

The Court has carefully reviewed the entire record, including the pleadings, affidavits, and exhibits submitted by the parties, and finds that the plaintiff has not presented sufficient evidence at this stage which demonstrates that the records and documents that were removed by the defendants when they left CDI on October 16, 2007, clearly constitute "trade secrets" under the North Dakota Uniform Trade Secrets Act. See Chapter 47-25.1, N.D.C.C. Further, the plaintiff has not established that the records and documents alleged to have been misappropriated by the defendants were "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." See N.D.C.C. § 47-25.1-01(4)(b). The Court finds that CDI has not met its burden of proof and established a probability or likelihood of success on the merits relative to the claim of misappropriation of "trade secrets."

CDI also seeks preliminary injunctive relief based on claims of breach of the duty of loyalty, unjust enrichment, and tortious interference with business relations. CDI contends that the defendants' solicitation of CDI's clients while still employed at CDI constitutes a breach of the duty of loyalty. As previously noted, the defendants have admitted to the solicitation of some of CDI's customers/clients while still employed at CDI in October 2007. The Supreme Court of North Dakota

has recognized that "soliciting the employer's clients for one's self without the employer's consent is contrary to the purpose of N.D.C.C. § 34-02-12 . . . [and] constitutes a breach of the duty of loyalty entitling the [employer] to 'equitable protection against unfair competition.'" Warner and Company v. Solberg, 634 N.W.2d 65, 72 (N.D. 2001) (quoting Spectum Emergency Care, Inc. v. St. Joseph's Hospital & Health Ctr., 479 N.W.2d 848, 852 (N.D. 1992)). The record contains sufficient evidence to sustain CDI's burden of proof as to the likelihood of success on the claim of a breach of the duty of loyalty. As a result, this Dataphase factor tends to favor CDI as to this claim for relief. Whether a preliminary injunction should issue involves a consideration and analysis of all of the Dataphase factors to determine whether they weigh in favor of granting an injunction.

### B.     THE THREAT OF IRREPARABLE HARM

CDI argues that it will suffer irreparable harm as a result of the misappropriation of trade secret information. CDI argues that virtually all of its customers have been lured from CDI to West River Pumps and, as a result, CDI will lose over one million dollars in annual revenue. CDI contends that it is threatened with the total loss of its business in the Dickinson area.

To demonstrate irreparable harm the plaintiff must show that the harm is not compensable through an award of monetary damages. Glenwood Bridge, Inc. v. City of Minneapolis, 940 F.2d 367 (8th Cir. 1991). It is clear under North Dakota law that a prevailing party on a claim of misappropriation of trade secrets may be entitled to monetary damages and the recovery of reasonable attorney's fees. See N.D.C.C. § 47-25.1-03 (damages); N.D.C.C. § 47-25.1-04 (attorney's fees). Thus, if the plaintiff prevails at trial and establishes that the defendants unlawfully acquired confidential trade secret information, the plaintiff may be compensated through an award

of costs, attorney's fees, and economic damages. To the extent that CDI alleges harm proximately caused by the defendants' solicitation of CDI's customers, that harm may also be compensated by an award of damages and/or injunctive relief. See Warner and Co. v. Solberg, 634 N.W.2d 65, 72 (N.D. 2001) (recognizing a cause of action for breach of duty of loyalty); Spectrum Emergency Care, Inc. v. St. Joseph's Hosp. and Health Ctr., 479 N.W.2d 848, 852 (N.D. 1992). The Court finds that CDI has an adequate remedy at law for the recovery of economic damages. The evidence presented fails to show that CDI will suffer irreparable harm for which there is no legal remedy if a preliminary injunction is not granted at this stage of the litigation.

"The basis for injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." Bandag, Inc. v. Jack's Tire & Oil, Inc., 190 F.3d 924, 926 (8th Cir. 1999). It is well-established that when there is an adequate remedy at law, a preliminary injunction is not appropriate. Modern Computer Sys., Inc. v. Modern Banking Sys., Inc., 871 F.2d 734, 738 (8th Cir. 1989). The Court finds that at this stage of the litigation, CDI has failed to sustain its burden of proof to establish that it would suffer irreparable harm if a preliminary injunction is not issued. There are adequate remedies at law to address any harm shown to be proximately caused by the conduct of the defendants. The Court finds that this Dataphase factor weighs against the issuance of a preliminary injunction.

### C.   BALANCE OF THE HARM

In the analysis of the Dataphase factors, the Court is required to balance the equities and give careful consideration to each of the four enumerated factors. In balancing the equities, no single factor is determinative.

CDI contends that the request for a preliminary injunction will not harm the defendants and that any possible harm would be minimal. The defendants argue that the issuance of a preliminary injunction would ultimately result in West River Pumps going out of business and the partners being forced into bankruptcy. They contend that the harm would extend to the individual defendants who have each personally guaranteed a $150,000 loan and a $150,000 line of credit for the business, and whom have each made personal contributions of $33,333 to initially finance the operations of West River Pumps.

The Court finds that CDI has lost customers as a result of the defendants' sudden departure from CDI on October 16, 2007, and the creation of a competing business. However, the evidence in the record also supports a finding that the defendants would likely be forced out of business and placed in financial ruin by the issuance of a preliminary injunction. It is clear and undisputed that the specialized equipment and services provided by CDI and West River Pumps cater to a select and limited number of customers/clients in the oil and gas industry in western North Dakota. The granting of a preliminary injunction would not only result in significant economic losses to West River Pumps, but it would also have a direct <u>and</u> indirect financial impact on CDI.

As a practical matter, both entities would suffer considerable and irreparable losses. The harm in this case has already occurred. The Court cannot order the customers/clients to return to CDI. It would be detrimental to the customers/clients, and not particularly helpful to CDI, if the Court were to enjoin West River Pumps from servicing those customers without forcing them to return to CDI. There are clearly adequate legal remedies to address the harm if the plaintiff prevails at trial. The Court finds that this <u>Dataphase</u> factor does not weigh in favor of either party. All

parties are at significant risk of substantial economic losses if a preliminary injunction is granted at this stage or if this litigation continues for a prolonged period of time.

### D.     PUBLIC INTEREST

The Court recognizes that the public interest favors the protection of trade secret information gathered and developed by a company at significant expense. La Calhene, Inc. v. Spolyar, 938 F. Supp. 523, 531 (W.D. Wis. 1996). The public interest also favors fair competition in the workplace but disfavors the solicitation of customer/clients by an employee whose employment has not ended.

The Court also recognizes that the law in North Dakota strongly favors "at-will" employees who choose to leave their employment and go to work for a competitor. North Dakota law places very strict limitations and restrictions on an employer's efforts to restrain a former employee's business or occupation. For more than seventy years the North Dakota Supreme Court has consistently held that employment contracts cannot lawfully contain a restraint of trade. North Dakota law does not recognize as lawful any contract or agreement which is designed to impose a restraint on the exercise of one's lawful profession, trade, or business except for the limited circumstances outlined in Section 9-08-06 of the North Dakota Century Code. See Warner and Co. v. Solberg, 634 N.W.2d 65 (N.D. 2001); Pruco Securities Corp. v. Montgomery, 264 F. Supp. 2d 862, 868-869 (D.N.D. 2003). In addition, the North Dakota Supreme Court has recognized that restraints on the solicitation of clients after employment ceases are expressly prohibited. Warner and Co. v. Solberg, 634 N.W.2d 65, 73 (N.D. 2001). The Court has carefully considered the public interest factor and acknowledges that an analysis of this factor is a close call. In balancing the

equities, the Court concludes that this <u>Dataphase</u> factor does not weigh strongly in favor of CDI and weighs more against the issuance of a preliminary injunction.

## II. <u>CONCLUSION</u>

After carefully reviewing the entire record, the Court finds that CDI has failed to sustain its burden of proof and the stringent burden of establishing the necessity of a preliminary injunction at this early stage of the litigation. The <u>Dataphase</u> factors, when viewed in their totality, do not weigh in favor of the issuance of a preliminary injunction. Admittedly, the consideration and analysis of the four <u>Dataphase</u> factors is a very close call and both parties have presented well-reasoned legal arguments in support of their respective positions. In balance, the Court finds that the equities weigh in favor of not granting a preliminary injunction. There are adequate remedies at law available to the prevailing party to address any harm shown to be caused by the conduct of the defendants. More important, it is well-established that a preliminary injunction is considered to be an extraordinary remedy and the need for such a remedy must be clearly established by the movant. The evidence in the record before the Court does not support the issuance of such a drastic remedy. The Court **DENIES** the Plaintiff's Motion for a Preliminary Injunction (Docket No. 10). The Court **GRANTS** the Defendants' Motion to Dissolve Temporary Restraining Order (Docket No. 19). The Court **DENIES** the Plaintiff's Motion to Strike Defendant's Reply Memorandum (Docket No. 36) as moot as the reply memorandum and affidavits (Docket Nos. 30-33) were not considered.

**IT IS SO ORDERED**

Dated this 13th day of December, 2007.

*/s/  Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court
